**Jennifer J. Middleton**, OSB No. 071510
jmiddleton@justicelawyers.com
**Caitlin V. Mitchell**, OSB No. 123964
cmitchell@justicelawyers.com
Johnson Johnson Lucas & Middleton P.C.
975 Oak Street, Suite 1050
Eugene, OR 97401
Tel: 541-484-2434
Fax: 541-484-0882
Attorneys for the Plaintiff

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
### EUGENE DIVISION

| | |
|---|---|
| **SHONNA WEAVER,**<br><br>Plaintiff,<br><br>vs.<br><br>**EDUARD WEBER, WEBER ENTERPRISES, INC.**<br><br>Defendants. | Case No. 6:21-cv-1050-<br><br>**COMPLAINT**<br><br>**Title VII, ORS 659A.030, Intentional Inflication of Emotional Distress**<br><br>_Demand for Jury Trial_ |

### INTRODUCTORY STATEMENT

**1.**

For over 15 years, Defendant Eduard Weber, founder and former President of Weber Enterprises, Inc., sexually harassed Shonna Weaver. Weber Enterprises employed Shonna Weaver as a caregiver for Weber's ailing wife. Weber regularly demanded that Shonna Weaver help him ejaculate. He exposed himself to her, told her to take her clothes off, and masturbated in front of her. When Shonna Weaver disclosed Weber's harassment to Human Resources, Weber

PAGE 1 - COMPLAINT

Enterprises responded that it was unable to guarantee her a workplace free from sexual harassment unless she would agree to take a demotion that entailed a substantial pay cut. When Shonna Weaver declined, Weber Enterprises terminated her employment. This is an action arising under Title VII, ORS 659A.030, and Oregon Common Law, challenging Defendants' sex-based discrimination and retaliation against Shonna Weaver.

### PARTIES

2.

Shonna Weaver is a resident of Eugene, Oregon. She was born in Seoul, Korea and has lived in the United States since 1979. She is female.

3.

Weber Enterprises, Inc. is a domestic business corporation that owns and operates numerous Taco Bell franchise restaurants in Oregon. Its primary place of business is Eugene, Oregon. Eduard Weber ("Weber") and his wife, Marie Weber, founded Weber Enterprises, and Weber served as its President for many years. Weber Enterprises remains a family business and is now run by their children.

4.

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

5.

Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the events and omissions giving rise to the claims occurred in Lane County, Oregon.

### FACTS

6.

Weber Enterprises hired Shonna Weaver as a full-time caregiver for Marie Weber in 2002. Marie Weber had suffered a stroke and was physically compromised. Shonna Weaver's job responsibilities included assisting Marie in dressing, bathing, and cooking. She drove Marie to her appointments, to church, and to Defendants' offices. A few years after hiring

Shonna Weaver, Weber Enterprises expanded her duties to include housekeeping for both Marie and Eduard Weber. Weber Enterprises was happy with Shonna Weaver's job performance, giving her periodic raises and positive evaluations.

**7.**

Shonna Weaver worked in the Weber household rather than in Defendants' offices or franchises. She rarely interacted with other Weber Enterprises employees. She was the sole employee of Weber Enterprises whose job entailed providing direct care to the family. At the time of hire, Weber Enterprises did not give Shonna Weaver an employee handbook or any other information, written or verbal, explaining its sexual harassment policies or how employees should report a violation. It did not give Shonna Weaver a copy of her job description until 2021. It did not designate any specific person as Shonna Weaver's supervisor. Eduard Weber, Marie Weber, and other family members had the power to direct her work and to hire and fire her.

**8.**

Starting in approximately 2005, Weber began to make unwanted sexual advances towards Shonna Weaver. He would unfasten his robe and expose his naked body when she entered his bedroom. He told Shonna Weaver that he enjoyed "air drying," even though he had not recently showered. Shonna Weaver felt extremely uncomfortable and avoided Weber whenever possible.

**9.**

Weber's behaviors soon escalated. He told Shonna Weaver repeatedly that his doctor was worried because Marie could not have sex with him, and that it was unhealthy for a man not to ejaculate. He asked Shonna Weaver to help. She refused. Weber told Shonna Weaver that she should help him because he is a man and she is a woman, and it's "natural" for them to be together. He said he wanted someone "mature" who could "keep it to themselves." He said, "you should be able to do me a favor and give me an erection." He told her, "You don't have a husband. If you had a husband, I wouldn't ask you to do this." When Shonna Weaver refused, Weber masturbated in front of her, watching her.

**10.**

Weber sexually touched Shonna Weaver without her consent. He walked up behind her and rubbed his pelvis against her. On multiple occasions he followed her into the bathroom and tried to put his hand on her breast while he was masturbating. When she pushed him away and moved towards the door, he grabbed her arm to stop her from leaving.

**11.**

Weber regularly told Shonna Weaver he had "big balls" and asked her to look at them. He pointed out that one was larger than the other. He asked her to put anti-itch cream on his testicles. On at least one occasion Weber offered Shonna Weaver one hundred dollars in exchange for helping him get an erection. Shonna Weaver refused.

**12.**

Weber tried to isolate Shonna Weaver from Marie. He cornered her in the closet when she was retrieving clothing or towels. He went upstairs, out of Marie's sight, and called for Shonna Weaver to come up and help him. Shonna Weaver would tell Marie, "Don't make me go up there." But although Shonna Weaver was obviously fearful, Marie did not intervene. Instead, she would occasionally ask Weber if he was "decent" before sending Shonna Weaver into a room where Weber was waiting. On one occasion when Weber was masturbating in front of Shonna Weaver while Marie was sitting nearby, Shonna Weaver said, very loudly to ensure that Marie would hear: "Don't do that, get out of here," and then, "He's such a dirty old man." Marie took no action. The harassment continued.

**13.**

Shonna Weaver responded to Weber's sexual harassment by asking Weber to stop, telling him that what he was asking was against her morals and not part of her job, and telling him that he made her very uncomfortable. Weber ignored her. He made the same demands and engaged in the same sexually-aggressive behavior whenever he could catch her alone, which occurred on a weekly or monthly basis.

PAGE 4 - COMPLAINT

**14.**

Shonna Weaver was a single parent of small children when she began working for Weber Enterprises. She could not afford to lose her job. She was humiliated by Weber's behavior, which made her feel dirty and immoral. Weber was respected by his family, religious community, and professional relations. When Shonna Weaver attended the Webers' social gatherings as Marie's caregiver, she saw that people were eager to talk to Weber and tried to please and impress him. The disconnect between Weber's public persona and his behavior in private was deeply disturbing. Aware of Weber's power and reputation, Shonna Weaver believed that if she disclosed his sexualized treatment of her, she would be called a liar and lose her job, her friends, and her dignity.

**15.**

In August 2019 Marie Weber moved into an assisted living facility, where Shonna Weaver continued to work as her caregiver. With the arrival of COVID in March 2020, Shonna Weaver was not permitted to enter the facility. Weber Enterprises continued to employ her for approximately six hours per week as Eduard Weber's housekeeper.

**16.**

With Marie gone, Weber became bolder. The harassment became more frequent. He continued to tell her that he had a medical problem and needed her assistance to become erect. He demanded that she help him. He told her, "I just want to see what it looks like. If you would play with it a little bit I'd probably get an erection." He told her he was worried he might not be capable of having an erection, and that she should at least take off her clothes so he could find out. He demanded her assistance in putting a pain patch on his back, which necessitated that she touch him, and insisted on being naked while she did so. He followed her naked around the home as she attempted to clean and would masturbate in front of her. He left the ejaculate on the floor for her to clean up.

**17.**

In November 2020, Marie moved back into the Weber home with a team of female hospice workers to assist her. The workers provided Marie with 24-hour care on a rotating basis. Weber approached the women assigned to night duty and asked them to help him get an erection. He suggested they take a bath with him. He began taking off his clothes in front of them. When they said no, he told them not to tell anyone what had happened.

**18.**

When the lead hospice worker learned that Weber was sexually harassing her staff, she called Theresa Weber, Weber's daughter and an owner of Weber Enterprises. She told Theresa what Weber had done and that she and her staff were quitting. Theresa was upset and apologetic.

**19.**

Before they left the Weber home, the hospice workers approached Shonna Weaver and told her about Weber's harassment. Shonna Weaver thought that Weber would not treat American women the way he treated her. She told the hospice workers that Weber had asked her to help him ejaculate, masturbated in front of her, and engaged in other similar behavior for many years. The hospice workers encouraged Shonna Weaver to report Weber.

**20.**

After the hospice workers departed, Theresa called Shonna Weaver and asked her if she witnessed any of the behavior that the hospice workers described. Shonna Weaver told Theresa that she was not surprised because Weber "has not been good to me either." Theresa did not ask Shonna Weaver to elaborate. Shonna Weaver then explained that she told the hospice workers that, when they stayed overnight, they could use the "blue room," a room in the Weber home that can be locked from the inside. Theresa became angry and told Shonna Weaver that it "wasn't her place" to say that to the hospice workers. Seeing that Theresa was not receptive to her disclosures and fearing that she could lose her job, Shonna Weaver said nothing more. Theresa took no action. Weber's sexual harassment continued.

**21.**

Without full time hospice care, Marie moved back into the assisted living facility. Soon after, Shonna Weaver was able to obtain her COVID vaccinations and received permission to enter the facility to work with Marie. Weber Enterprises offered to restore Shonna Weaver to her full-time caregiving position. Her job would be to care for both Marie (at the facility) and to continue assisting Weber with housekeeping and other tasks in his home.

**22.**

Shonna Weaver accepted the job. She also disclosed Weber's sexual harassment to Human Resources. She told Human Resources that she wanted to continue working for the family but that the sexual harassment must stop. Weber Enterprises told Shonna Weaver that it could not guarantee her an environment free from sexual harassment if she continued to work in Weber's home. It suggested that Weaver take an entry-level, minimum wage job in one of its Taco Bell franchises. When Shonna Weaver told Weber Enterprises that was unacceptable, Weber Enterprises terminated her employment. She lost the job that she had held for 20 years, along with her health insurance.

**23.**

Shonna Weaver suffered profound psychological and emotional effects as a result of Weber's egregious sexual harassment. She is unable to trust men and is fearful of them. She is reluctant to form romantic relationships. She has withdrawn, spending her time with her immediate family and at church.

**24.**

Shonna Weaver also lost friends due to Defendants' actions. The Korean community in the Eugene area is tight-knit. Weber's daughter-in-law, who is also Korean, was a close friend of Shonna Weaver's. Their families attend the same church, where Shonna Weaver is the treasurer of the Korean Association and a church leader. Since disclosing Weber's harassment to Human Resources, Shonna Weaver has not spoken to her friend and has had to socially isolate herself.

**25.**

Plaintiff filed a complaint with the EEOC on May 24, 2021 alleging sex discrimination and retaliation. She filed a complaint with BOLI on June 2, 2021, again alleging sex discrimination and retaliation. On July 9, 2021, the EEOC issued a Notice of Right to Sue.

**FIRST CLAIM FOR RELIEF**
**TITLE VII – 42 U.S.C. SEC. 2000E ET SEQ**
**DISCRIMINATION BECAUSE OF SEX, RETALIATION**
**AGAINST WEBER ENTERPRISES, INC.**

Plaintiff repeats and realleges paragraphs 1 through 25 as though fully set forth herein.

**26.**

Defendant subjected Shonna Weaver to unwelcome sex-based harassment that was sufficiently severe and pervasive to alter the conditions of her employment and create a hostile working environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. sec. 2000e-2(a)(1). It knowingly refused to take corrective measures reasonably calculated to end the harassment. It then retaliated against Shonna Weaver for reporting the harassment by demoting and terminating her, in violation of 43 U.S.C. sec. 2000e-3.

**27.**

Shonna Weaver lost valuable wages and benefits because of Defendant's discrimination and retaliation. She also suffered humiliation, injustice, and other emotional distress.

**28.**

Shonna Weaver is entitled to back pay, front pay, and compensatory damages in an amount to be determined by the jury.

**29.**

Defendant's discrimination was intentional or taken in reckless disregard for Shonna Weaver's rights. Punitive damages in an amount to be determined by the jury should be awarded to punish Defendant and to deter it and others from acting in a similar manner in the future.

**30.**

Shonna Weaver is further entitled to her reasonable attorney fees and costs.

### SECOND CLAIM FOR RELIEF
### ORS 659A.030 – DISCRIMINATION BECAUSE OF SEX, RETALIATION
### AGAINST ALL DEFENDANTS

Plaintiff repeats and realleges paragraphs 1 through 30 as though fully set forth herein.

**31.**

Defendants subjected Shonna Weaver to unwelcome sex-based harassment that was sufficiently severe and pervasive to alter the conditions of her employment and create a hostile working environment in violation of ORS 659A.030. They knowingly refused to take corrective measures reasonably calculated to end the harassment. They then retaliated against Shonna Weaver for reporting the harassment by demoting and terminating her employment.

**32.**

By the acts described above, Defendant Eduard Weber aided and abetted Weber Enterprises, Inc.'s discrimination in violation of ORS 659A.030(1)(g).

**33.**

Shonna Weaver lost valuable wages and benefits because of Defendants' discrimination. She also suffered humiliation, injustice, and other emotional distress.

**34.**

Shonna Weaver is entitled to back pay, front pay and compensatory damages in an amount to be determined by the jury.

**35.**

Defendants' discrimination was intentional or taken in reckless disregard for Shonna Weaver's rights. Punitive damages in an amount to be determined by the jury should be awarded to punish Defendants and to deter them and others from acting in a similar manner in the future.

**36.**

Shonna Weaver is further entitled to her reasonable attorney fees and costs.

### THIRD CLAIM FOR RELIEF
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### AGAINST EDUARD WEBER

Plaintiff repeats and realleges paragraphs 1 through 36 as though fully set forth herein.

**37.**

By the actions described above, Defendant Weber caused Shonna Weaver severe emotional distress. His acts constituted an extraordinary transgression of the bounds of socially tolerable conduct. He either intended to inflict the distress or knew that such distress was certain or substantially certain to result from his conduct.

**38.**

Shonna Weaver suffered humiliation, injustice, and other emotional distress as a result of Defendant Weber's actions. She is entitled to compensatory damages in an amount to be determined by the jury.

**39.**

Defendant Weber's discrimination was intentional or taken in reckless disregard for Shonna Weaver's rights. Punitive damages in an amount to be determined by the jury should be awarded to punish Defendant and to deter him and others from acting in a similar manner in the future.

WHEREFORE, Plaintiff requests that this Court enter judgment in her favor and award the following relief:

1. Declare that Defendants engaged in unlawful sex discrimination against Shonna Weaver;

2. Award front pay to compensate Shonna Weaver for the wages and benefits she

would have earned;

3. Award back pay to compensate Shonna Weaver lost wages and benefits, together with prejudgment interest;

5. Award compensatory damages in an amount to be determined by the jury;

6. Award punitive damages in an amount to be determined by the jury;

7. Award reasonable attorney fees and costs;

8. Grant all other relief as this Court deems just and proper.

Respectfully submitted this 14th day of July, 2021.

**JOHNSON JOHNSON LUCAS & MIDDLETON, P.C.**

/s/ Caitlin Mitchell
**Caitlin V. Mitchell**, OSB No. 123964
cmitchell@justicelawyers.com
**Jennifer J. Middleton**, OSB No. 071510
jmiddleton@justicelawyers.com
Johnson Johnson Lucas & Middleton P.C.
975 Oak Street, Suite 1050
Eugene, OR 97401
Tel: 541-484-2434
Fax: 541-484-0882
Attorneys for the Plaintiff